# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1343

_____

| | | |
|---|---|---|
| Jeanette Jackson, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| United Parcel Service, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 26, 2008
Filed: December 4, 2008

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jeanette Jackson brought this suit against United Parcel Service, Inc. ("UPS") alleging race and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Following discovery, the district court[1] granted UPS's motion for summary judgment and dismissed the case with prejudice. We affirm.

_____

[1]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

UPS has employed Jackson on an hourly basis since 1985. Jackson is a member of a bargaining unit represented by the International Brotherhood of Teamsters ("Teamsters"), and her employment is governed by a collective bargaining agreement ("CBA") between the Teamsters and UPS that includes a formal grievance process for employees to challenge employment decisions. In May 2006, Jackson used her seniority to obtain a higher paying position as a "feeder driver," which involves driving a feeder (tractor-trailer) full of packages to pick-up points and customer locations. After completing an 80-hour training program, Jackson began working as a feeder driver on June 7, 2006. The next day, Jackson caused an accident in which she damaged another tractor-trailer. After taking a planned one-week vacation, Jackson contacted her feeder manager, Paul Hall, about reporting back to work. Paul Hall informed Jackson that he and Cedric Williams, the District Labor Manager, had decided to disqualify her as a feeder driver because of the accident. Paul Hall instructed her to report to her previous position as an air shuttle driver, which she did.

Jackson filed a grievance against UPS pursuant to the CBA on June 19, 2006, asking that UPS reinstate her as a feeder driver and award her full back pay for the difference in salary between the air shuttle and feeder driver positions. Jackson also filed a charge of discrimination on the basis of race, gender, and retaliation with the Equal Employment Opportunity Commission ("EEOC") on June 27, 2006. Jackson had filed two previous EEOC charges on July 15, 2004, and December 8, 2005, alleging unrelated instances of discrimination by UPS. Paul Hall and Williams were not aware that Jackson had filed these previous EEOC charges when they decided to disqualify her as a feeder driver.

Shortly after the disqualification decision, Naaman Kelly, the on-road feeder supervisor, informed Paul Hall that, pursuant to company policy regarding driving

accidents, Jackson should not have been disqualified. Kelly also spoke with Durrell Hall, the Labor Manager, who agreed that the disqualification decision was in error. Durrell Hall then received clearance from Williams and Todd Hyden, the Division Manager, to reinstate Jackson as a feeder driver. However, before Jackson could be reinstated, Durrell Hall received notice from the EEOC of Jackson's discrimination charge. Durrell Hall informed Kelly that "he had to retract everything they had planned to do," and because Plaintiff filed an EEOC charge, it "was out of his hands" and became a human resources decision.

Pursuant to the CBA, UPS and the Teamsters held a local hearing regarding Jackson's grievance on July 28, 2006. The parties did not reach a settlement at the local level. The next step in the grievance process was a hearing before a review committee comprised of UPS and Teamsters representatives known as "the panel." The panel had a meeting scheduled for August 2006 in Nashville, Tennessee, during which it could have heard Jackson's grievance. However, Jackson elected to wait until the panel's September 2006 meeting in Little Rock, Arkansas. The day before the September meeting, the parties reached a settlement in which UPS reinstated Jackson as a feeder driver as of September 26, 2006, and awarded her full back pay. As a result of the settlement, Jackson lost no pay, seniority, or any other employment benefit due to the disqualification decision.

Jackson received her "right to sue" letter from the EEOC on December 27, 2006, and filed the present action in federal district court on March 26, 2007. Following discovery, UPS filed a motion for summary judgment. The district court granted summary judgment for UPS and dismissed the case with prejudice. The court held that Jackson failed to establish a prima facie case for either her disparate treatment claim or her retaliation claim because she did not suffer an adverse employment action. Jackson brings this appeal.

II.

"We review a district court's grant of summary judgment de novo." Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 867 (8th Cir. 2008). "In doing so, we apply the same standard as the district court, viewing the evidence in the light most favorable to the nonmoving party and giving that party the benefit of all inferences that may reasonably be drawn." Id. at 867-68. Summary judgment should be granted if "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A. Disparate Treatment

Jackson alleges that UPS discriminated against her on the basis of race and gender when it disqualified her from her position as a feeder driver. Because Jackson did not present any "direct evidence of discrimination," she must "create[] an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)" in order to survive a motion for summary judgment. McGinnis v. Union Pac. R.R., 496 F.3d 868, 873 (8th Cir. 2007). "Under this framework, the plaintiff bears the burden of establishing a prima facie case of discrimination." Id. To meet this burden, Jackson must show that "(1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently." Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005) (quotation omitted). Therefore, to survive summary judgment, Jackson must establish that UPS's initial disqualification decision constituted an adverse employment action. See McGinnis, 496 F.3d at 873; Shanklin, 397 F.3d at 602. UPS contends that Jackson did not suffer an adverse employment action because it reversed its disqualification decision and reinstated Jackson with full back pay and no loss of seniority or any other employment benefit. UPS emphasizes that, even during her period of disqualification, Jackson

-4-

performed her prior work as a shuttle driver. Jackson argues that UPS's initial disqualification decision constituted an adverse employment action and alleges that she experienced depression and anxiety as a result of that decision.

This court has held that a demotion or denial of a promotion, even when accompanied by a loss in pay, is not an adverse employment action when it is corrected in a timely manner. See Fair v. Norris, 480 F.3d 865, 870 (8th Cir. 2007); Tatum v. City of Berkeley, 408 F.3d 543, 553 (8th Cir. 2005); Carpenter v. Northwest Airlines, Inc., 47 F. App'x 424, 426 (8th Cir. 2002) (per curiam) (unpublished). In Fair, the plaintiff was denied a promotion when the Arkansas Department of Corrections (ADC) failed, in error, to give her credit for her master's degree. 480 F.3d at 867. As a result, Fair was eliminated from consideration for promotion. Id. After Fair filed a grievance, ADC discovered its mistake and offered her the promotion and a raise retroactive to the date on which ADC would have promoted her absent the mistake. Id. at 867-68. Fair declined the position, asserting that the raise was inadequate, and filed a complaint alleging racial discrimination. Id. 868-69. The district court dismissed the complaint. Id. at 869.

We affirmed the dismissal of Fair's complaint because she did not suffer an adverse employment action. Id. at 870. We acknowledged that Fair was initially rejected for the position and that "[h]ad the ADC not taken corrective action and offered Fair the job after reviewing her grievance, she may have been able to present a prima facie case of discrimination." Id. However, "the ADC acted upon th[e] grievance . . . and attempted to right its prior wrong," which was "the kind of extrajudicial corrective action envisioned by Congress when it passed Title VII." Id. In rejecting Fair's contention that she should not have had to file a grievance to receive the promotion, we noted that "[o]nly twenty-two days lapsed between the filing of Fair's grievance and the ADC's offer of the promotion, an offer that included retroactive pay and benefits." Id. "[T]his delay amounted to no more than a 'mere inconvenience' and [did] not give rise to an actionable Title VII claim." Id.

In the present case, UPS recognized its mistake, took corrective action, and reinstated Jackson with full back pay and no loss of seniority or any other employment benefit. During her three-month period of disqualification, Jackson performed her prior work as a shuttle driver and was compensated accordingly. The only damages that might remain are interest on Jackson's back pay and stress that Jackson alleges accompanied her disqualification. This court has consistently held that "[an] adverse employment action must be one that produces a *material* employment disadvantage." Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016 (8th Cir. 1999) (emphasis added) (quotation omitted). The small amount of interest Jackson might recover does not constitute a material disadvantage. This finding is bolstered by the fact that Jackson voluntarily postponed her grievance hearing, perhaps prolonging by a month the period during which she received less pay. Furthermore, Jackson's nonspecific claim of emotional distress does not transform UPS's disqualification decision into an adverse employment action. In Forshee v. Waterloo Indus., Inc., 178 F.3d 527 (8th Cir. 1999), this court held that a plaintiff must present "competent evidence of genuine injury" to recover for emotional distress in a discrimination case. Id. at 531 (quotation omitted). Jackson has failed to present such competent evidence in this case.

We hold that Jackson failed to establish a prima facie case of race or gender discrimination because UPS's initial disqualification decision did not constitute an adverse employment action. See Fair, 480 F.3d at 870; Tatum, 408 F.3d at 553; Carpenter, 47 F. App'x at 426. The facts of this case, viewed in the light most favorable to Jackson, simply do not establish a "*material* employment disadvantage." Kerns, 178 F.3d at 1016 (emphasis added) (quotation omitted). Jackson's disqualification period was "no more than a mere inconvenience" and does not give rise to an actionable claim for discrimination. Fair, 480 F.3d at 870. Therefore, the district court properly granted UPS's motion for summary judgment on Jackson's disparate treatment claim. See McGinnis, 496 F.3d at 873.

In so holding, we do not find that rescinding a prior employment action will *always* shield an employer from liability. Such a broad rule would permit employers to escape Title VII liability merely by correcting their discriminatory acts after a significant amount of time has passed or only when litigation has been threatened. See Crawford v. Carroll, 529 F.3d 961, 972 (11th Cir. 2008). However, holding that corrective action *never* protects an employer from liability might create equally perverse incentives. If we allow Jackson's claim to proceed in the present case, we would undermine UPS's formal grievance process. Indeed, if an employer could be sued for discrimination even after promptly correcting an alleged wrong, there would be little incentive for "the kind of extrajudicial corrective action envisioned by Congress when it passed Title VII." Fair, 480 F.3d at 870. Therefore, because UPS promptly reinstated Jackson with full back pay and seniority, its initial disqualification decision was not an adverse employment action.

## B. Retaliation

Jackson alleges that UPS's decision to disqualify her as a feeder driver constituted retaliation against her for filing EEOC charges against the company. Indeed, Jackson filed EEOC charges on July 15, 2004, and December 5, 2005, for alleged acts of discrimination unrelated to this case. On June 27, 2006, she filed the EEOC charge on which this lawsuit is based. "Title VII prohibits retaliation against an employee who files charges of discrimination . . . ." Thompson v. Bi-State Dev. Agency, 463 F.3d 821, 826 (8th Cir. 2006); accord 42 U.S.C. § 2000e-3(a). Because Jackson "presented no direct evidence of retaliation, we apply the burden-shifting analysis established in" McDonnell Douglas, 411 U.S. 792. Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005). Therefore, "the plaintiff first must demonstrate a prima facie case of retaliation" to survive summary judgment. Id. To meet this burden, Jackson must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) [there was] a causal connection between the protected activity and the adverse employment action." Id.

To establish an adverse employment action in the context of her retaliation claim, Jackson must demonstrate that a reasonable employee would have found UPS's actions "materially adverse," meaning they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). UPS intended to reinstate Jackson as a feeder driver within a few weeks of her disqualification. However, upon learning of her June 2006 EEOC charge, UPS decided to postpone Jackson's reinstatement and let the company's grievance process play out. After the grievance process, UPS promptly reinstated Jackson with full back pay and seniority. Even during her brief period of disqualification, she performed her prior work as a shuttle driver and was compensated accordingly. In light of these facts, UPS's actions would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington N., 548 U.S. at 68). We hold that Jackson failed to establish a prima facie case of retaliation with respect to her June 2006 EEOC charge because UPS's actions were not materially adverse. See id.

We need not decide whether UPS's actions were materially adverse with respect to Jackson's July 2004 and December 2005 EEOC charges because she failed to establish a causal connection between those charges and UPS's disqualification decision.[2] To establish a causal connection, Jackson must demonstrate that UPS had actual or constructive knowledge of her previous EEOC charges. See Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 715 (8th Cir. 2000). "[A] causal link does not exist if the employer is not aware of the employee's statutorily protected activity." Wolff v. Berkley Inc., 938 F.2d 100, 103 (8th Cir. 1991). The record clearly shows that the decision makers–Paul Hall and Cedric Williams–were not aware that Jackson

---

[2] The district court did not address whether Jackson established the requisite causal connection. However, "[t]his court may affirm the judgment of the district court on any basis supported by the record." Moore v. Forrest City Sch. Dist., 524 F.3d 879, 885 (8th Cir. 2008).

had filed two previous EEOC charges when they decided to disqualify her as a feeder driver on June 16, 2006. Therefore, as a matter of law, Jackson cannot establish a causal connection between those EEOC charges and UPS's disqualification decision. See Buettner, 216 F.3d at 715; Wolff, 938 F.2d at 103. Jackson thus failed to establish a prima facie case of retaliation with respect to any of her EEOC charges, and the district court properly granted UPS's motion for summary judgment. See Kasper, 425 F.3d at 502.

## III.

Accordingly, we affirm the judgment of the district court.

_____