# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2651

_____

Kimberly Norman,

        Appellant,

    v.

Union Pacific Railroad Company,

        Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the District
\*  of Nebraska.
\*
\*
\*

_____

Submitted: March 11, 2010
Filed:  June 1, 2010

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Kimberly Ann Norman sued Union Pacific Railroad Company, alleging that it terminated her based on race, gender, and a perceived disability.  The district court[1] granted summary judgment to Union Pacific.  Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

---

[1]The Honorable William Jay Riley, Chief Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I.

Norman, a black woman, was a train dispatcher for Union Pacific from 1998 until 2006. Union Pacific offered employees a disability benefit plan for short- and long-term absences. Short-term benefits covered employees unable to perform the essential functions of their positions due to sickness or accident. Long-term benefits were available to those who could not do their usual work (during the first 12 months), and thereafter do any work reasonably suited to their education, training, and experience. Long-term benefits for employees suffering from mental illness or nervous disorders were limited to 12 months.

In February 2001, Norman received short-term benefits following a miscarriage. Complications prompted further absences during the next three years. After each absence, she completed required training before returning to her position as a dispatcher.

In April 2004, Norman was diagnosed with irritable bowel syndrome, and went on leave. Union Pacific granted her long-term disability status. While on disability, she asked the company to accommodate her return to work. Norman requested a schedule tailored to her dietary and medication needs, greater access to restrooms, and excused absences on days when abdominal pains were severe. Union Pacific denied the requests.

Shortly after the diagnosis, the company questioned whether Norman's disability was caused by mental illness. Union Pacific demanded that Norman undergo an independent medical examination in July 2004. She complied, but the company did not contact her about her status for over a year. In August 2005, the disability plan wrote Norman explaining that her long-term benefits expired on July 31, 2005, citing the mental-illness limit. A second August letter told her that if she wanted to return to work, she would need to submit a return-to-work release signed by a physician by September 2, 2005.

Norman did not obtain a return-to-work release. She appealed the termination of benefits, arguing that her long-term disability resulted from a physical – not mental – condition. The plan decided that her physical condition independently justified benefits through November 2004, which in turn extended her mental-illness benefits until November 2005. After Norman provided further evidence of physical complications, Union Pacific again extended her benefits through February 2006.

Citing Norman's failure to provide a return-to-work release, Union Pacific refused to reinstate her. The company concluded that her employment ended in September 2005. Norman filed a charge of discrimination with the Nebraska Equal Opportunity Commission on August 17, 2006. Exhausting her administrative remedies, Norman sued, alleging race, gender, and disability discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq. In district court, Norman asserted that a white male train dispatcher received more favorable treatment after his diagnosis with mental illness. She claimed that Union Pacific assisted the white male in finding a non-safety-sensitive position while being treated for mental illness.

The court granted summary judgment to Union Pacific on all claims, ruling that Norman showed neither that her perceived mental illness was a basis for her dismissal, nor that similarly situated white or male employees received better treatment. Norman appeals.

II.

This court reviews the district court's judgment de novo. ***Davenport v. Univ. of Ark. Bd. of Trustees***, 553 F.3d 1110, 1112 (8th Cir. 2009). Summary judgment is appropriate if, viewing the facts favorably to the non-movant, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. ***Kosmicki v. Burlington N. & Santa Fe Ry. Co.***, 545 F.3d 649, 650 (8th Cir. 2008).

A.

Union Pacific asserts that Norman's claims are barred by the statute of limitations. Under the ADA and Title VII, an employee must seek relief within 300 days of the alleged discrimination. **42 U.S.C. §§ 12117**; **2000e-5(e)(1)**. *See Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005). The parties agree that Norman's termination was the alleged discriminatory act, but dispute the date her employment ended.

Union Pacific argues that it terminated her employment in September 2005, because she did not return to work or submit a release then. This argument ignores that Union Pacific kept her on its payroll and extended her benefits until February 2006. She was not dismissed until then, when she finally did not return to work and provide a return-to-work release. Norman's claim – filed on August 17, 2006, less than 200 days after the February dismissal – is not barred by the statute of limitations.

B.

Norman contends that Union Pacific terminated her employment because of a perceived mental disability in violation of the ADA. Absent direct evidence of disability discrimination, this court analyzes her claim under *McDonnell Douglas*. *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1044 (8th Cir. 2005), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under *McDonnell Douglas*, Norman must establish a prima facie case: (1) an ADA-qualifying disability; (2) qualifications to perform the essential functions of her position with or without reasonable accommodation; and (3) an adverse employment action due to her disability. *Finan v. Good Earth Tools, Inc.*, 565 F.3d 1076, 1079 (8th Cir. 2009).

Norman claims she is disabled because Union Pacific regarded her as mentally ill. The ADA defines a disability as a physical or mental impairment that substantially

limits one or more of the major life activities of an individual, a record of such impairment, or being regarded as having such an impairment. ***Kozisek v. County of Seward***, 539 F.3d 930, 934 (8th Cir. 2008). An employer regards an employee as disabled if it mistakenly believes that an employee's ailments substantially limit her ability to work. ***Id.*** at 935. Favorably reviewing the record, Union Pacific mistakenly regarded Norman as mentally ill. She sought medical treatment exclusively for physical ailments, underwent a psychiatric evaluation only because Union Pacific demanded it, and never received an independent diagnosis of mental illness. *Cf.* ***Brunko v. Mercy Hosp.***, 260 F.3d 939, 942 (8th Cir. 2001) (denying a 'regarded as' disability claim where the employer relied on a medical evaluation performed by employee's own physician). Because the company regarded her as mentally ill and limited in her ability to work, Norman has established an ADA-qualifying disability, the first requirement of a prima facie case.

Norman next must show she was qualified to perform the essential functions of her position. An individual satisfies this requirement if she has the requisite skill, experience, education, and other job-related requirements, and can perform essential job functions, with or without reasonable accommodation. ***Rehrs v. Iams Co.***, 486 F.3d 353, 356 (8th Cir. 2007), *citing* ***Cravens v. Blue Cross & Blue Shield of Kan. City***, 211 F.3d 1011, 1016 (8th Cir. 2000). Union Pacific agrees that Norman met the prerequisites for her position, but argues that she was unable to perform essential job functions.

The company contends that Norman was unable to perform essential job functions because she did not provide a return-to-work release. Union Pacific requires employees on extended disability leave to submit a release from a physician before their return to work. The company asserts that her failure to submit a release precluded regular attendance at work. *See* ***Rask v. Fresenius Med. Care N. Am.***, 509 F.3d 466, 469 (8th Cir. 2007) (recognizing attendance as a necessary job function). Norman was unaware of the mental illness characterization until August 2005, and complied with the plan's process to challenge it. She also claims that she was able to

return to work by February 2006, after recovering from a physical illness. Whether Norman was able to perform essential job functions at the time of her discharge is a question of fact. *Finan*, 1076 F.3d at 1079. The district court properly held that at the summary judgment stage, Norman could satisfy the qualification requirement of *McDonnell Douglas*.

Union Pacific also argues that Norman was not qualified because she previously said that she could not perform her essential job functions. *See Pickens v. Soo Line R.R. Co.*, 264 F.3d 773, 778 (8th Cir. 2001) (rejecting an ADA claim where an employee previously alleged he was completely unable to work). A previous assertion of disability is not fatal to Norman's claim. An employee may survive summary judgment after asserting a contradictory position if her explanations warrant the conclusion that the employee could perform essential job functions. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999). Norman alleges that she could do so, because she never suffered from mental illness and had recovered from physical ailments by the time of her termination. Her allegations are sufficient to create an issue of fact about her ability to perform in her position.

Norman finally must show that because of the perceived disability, she suffered an adverse employment action. *See Kratzer*, 398 F.3d at 1044. Undoubtedly, Norman suffered an adverse employment action, termination. *See Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008). Norman must also demonstrate that the termination resulted from the designation of her disability as a mental illness. However, her failure to submit a return-to-work release defeats her claim. The company required all employees seeking reinstatement after long-term disability – whether suffering from mental or physical disabilities – to obtain releases from physicians stating they could return to work. Nothing in the record suggests that Union Pacific's alleged mischaracterization of Norman's illness eliminated the requirement. Because Norman received long-term disability benefits until February 2006, Union Pacific policy mandated that she submit a release. Norman did not do so. The district court correctly concluded that the company's termination decision

was not based on her perceived mental disability. Because Norman fails to establish a prima facie case of disability discrimination, this court need not address her claim of pretext.

This court also rejects Norman's assertion that she was entitled to reasonable accommodations. Because she alleges that Union Pacific discriminated against her based on a perceived mental disability, this court cannot consider a claim for reasonable accommodations. *See Finan*, 1076 F.3d at 1080 (holding that an employee who is regarded as disabled is not entitled to reasonable accommodations), *citing Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir. 1999).

C.

Norman believes that her gender and race were motivating factors in Union Pacific's decision to terminate her. This court applies the *McDonnell Douglas* framework because she presents no direct evidence of discrimination. *See Jackson v. United Parcel Serv.*, 548 F.3d 1137, 1140 (8th Cir. 2008). Under *McDonnell Douglas*, Norman must first establish a prima facie case of discrimination. *Id.*

To establish a prima facie case of gender discrimination, Norman must show that she: (1) is a member of a protected class; (2) was qualified for her job; (3) suffered an adverse employment action; and (4) alleged facts that give rise to an inference of gender discrimination. *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 874 (8th Cir. 2007).

To establish a prima facie case of race discrimination, Norman must show that she: (1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly-situated employees who were not members of her protected class. *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005).

The parties focus on the fourth element on appeal. Norman asserts that she is similarly situated to a white male employee, who received more favorable treatment while on long-term disability. To establish that employees are similarly situated at the prima facie stage, a party need show only that the employees engaged in the same or similar conduct, but are disciplined in different ways. *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009). Here, both employees worked as train dispatchers, were perceived to have mental illnesses, and were on long-term disability leave. Union Pacific allegedly assisted the white male employee in securing other positions during his disability, even though he had a history of reprimands and lower performance evaluations than Norman. Unlike Norman, however, he complied with Union Pacific's requirement to submit a return-to-work release.

The district court denied both gender and race claims, concluding that the white male employee and Norman were not similarly situated because she did not obtain a return-to-work release. Norman attacks the district court's holding by focusing on the disparate treatment during the periods of long-term disability. She ignores that the conduct for which she was terminated was her failure to submit a release after her long-term disability. The period preceding the alleged violation is largely irrelevant to this court's analysis. *See, e.g., Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005) (explaining that employees were similarly situated at that point when they violated the same company policy). The different disciplines result from compliance (or non-compliance) with the company's instructions, rather than discrimination based on race or gender. Because Norman fails to establish a prima facie case of gender or race discrimination, summary judgment is warranted.

III.

The judgment of the district court is affirmed.

_____