UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

No. 10-2012

_____

Rebecca A. Young-Losee,         *
         *
      Plaintiff-Appellant,    *
v.         * Appeal from the United States
         * District Court for the Southern
Graphic Packaging International, Inc.,  * District of Iowa.
Altivity Packaging LLC, Jim Shelley,  *
and Beverly Adair,        *
         *
      Defendants-Appellees.  *

_____

Submitted: November 4, 2010
Filed: January 26, 2011

_____

Before RILEY, Chief Judge, BYE and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Rebecca Ann Young-Losee sued Graphic Packaging International, Inc., Altivity Packaging LLC, James Shelley and Beverly Adair (collectively "GPI"), asserting sex discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-3 et seq., and the Iowa Civil Rights Act ("ICRA"), Iowa Code ch. 216. GPI moved for summary judgment on all counts. Young-Losee opposed summary judgment on the retaliation claim. The district court granted GPI's motion on all claims.

Jurisdiction being proper under 28 U.S.C. § 1291, this court reverses and remands.

I.

This court states the facts in the light most favorable to Young-Losee. *See Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010). In 2004, Young-Losee began working for a predecessor of GPI, in its Des Moines plant. In the spring of 2008, she applied for an administrative assistant position under Adair. Young-Losee accepted the position in April 2008.

Shortly after she began as an administrative assistant, Adair began harassing her. Adair insulted her between three and thirteen times a day, calling her "retarded," "crippled," "stupid," and a "bitch." Additionally, Adair elbowed Young-Losee and stuck her finger out at her.

Within three days of accepting the position, Young-Losee complained to plant supervisor Shelley twice, to the office manager two or three times, to the production manager about fifteen times, and also twice to the plant's human resources ("HR") representative. About one month after starting the new position, Young-Losee filed a "Formal complaint of harassment" with the HR representative, who recommended that Young-Losee email her complaint to a marketing manager at the Georgia headquarters.

On Tuesday, May 6, Shelley and two managers met with Young-Losee to discuss the formal complaint. Shelley interrupted Young-Losee and did not permit her to speak at the meeting. He eventually wadded up the complaint, threw it in the garbage can, and told Young-Losee that it was "total bullshit." The meeting ended when Shelley pointed to the door, told Young-Losee, "I want you out of here," and said that he never wanted to see her again.

Young-Losee believed that she was fired at the meeting. The meeting ended two minutes before the end of her normal work day. She left after the meeting and did not return to work the next day. She experienced stress, anxiety attacks, and had trouble sleeping. The firing also created tension between Young-Losee and her husband, who still worked at GPI.

On Wednesday, May 7, Young-Losee emailed the marketing manager, stating that she was an employee "as of yesterday," but was "pushed out the door" after filing a formal complaint. That day, the marketing manager alerted the HR director for GPI, located in Illinois. The HR director called Young-Losee in the afternoon on Thursday, May 8, and told her she was not terminated. She also told Young-Losee that she would investigate the complaint and follow up with her.

The HR director traveled to Des Moines, conducting an investigation that was completed on Wednesday, May 14. That day, she called Young-Losee and told her that she should return to work, but Young-Losee responded that she would not return because she was unsatisfied with GPI's actions. The HR director then notified her that GPI would treat her refusal to return as a voluntary resignation, effective May 15, 2008. Young-Losee never returned to GPI.

## II.

This court reviews a district court's grant of summary judgment de novo, viewing all evidence and all reasonable inferences most favorably to the non-moving party, if there is a genuine dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Fercello*, 612 F.3d at 1077, *citing **Wallace v. DTG Operations, Inc.***, 442 F.3d 1112, 1117 (8th Cir. 2006). Summary judgment should be granted only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)**. The court should deny summary judgment

if there is sufficient evidence for a jury to return a verdict for the non-moving party. *Fercello*, 612 F.3d at 1077.

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful practice by [Title VII]." **42 U.S.C. § 2000e-3(a)**. This court analyzes ICRA retaliation claims under the "same method as federal retaliation claims." *Smith v. Allen Health Sys.*, 302 F.3d 827, 836 (8th Cir. 2002), *citing O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193 n.5 (8th Cir. 1995); *see* **Iowa Code § 216.11(2)**.

To defeat summary judgment, a plaintiff must produce either direct evidence of discrimination or create an inference of it under the *McDonnell Douglas* burden-shifting framework. *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010), *citing Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). If a plaintiff produces direct evidence, evidence of the employer's motives for a termination is an issue for trial, not summary judgment. *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046 (8th Cir. 2005), *citing Griffith*, 387 F.3d at 735.

Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 68 (2006). "'Direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence." *Griffith*, 387 F.3d at 736.

Young-Losee presented direct evidence that she was terminated in retaliation for filing a formal complaint of harassment. At the May 6 meeting, plant supervisor Shelley wadded up her complaint, called it "total bullshit," threw it in the garbage can, told her to leave, and said he never wanted to see her again.

These facts are direct evidence of a causal link between the filing of the complaint and her firing.

GPI argues repeatedly that there was no materially adverse action because Young-Losee was not fired, was in fact paid through May 15, and was offered a return to work. GPI relies mainly on *Jackson v. United Parcel Services, Inc.*, 548 F.3d 1137 (8th Cir. 2008). There, Jackson filed EEOC complaints in 2004 and 2005, alleging discrimination. *Id.* at 1139. Defendant UPS was not aware of the complaints. *Id.* Following an accident in 2006, Jackson was disqualified as a feeder driver and demoted to shuttle driver, her previous job. *Id.* Four days *after* her disqualification, she filed another complaint with the EEOC, alleging discrimination and retaliation. *Id.* A supervisor determined she should not have been disqualified and should be reinstated. *Id.* at 1140. Before she was reinstated, UPS learned of the EEOC charges and decided to delay her reinstatement until the union grievance process was complete, which took three months. *Id.* at 1139-40. This court found Jackson did not suffer a materially adverse action or establish a prima facie retaliation case. *Id.* at 1142-43. She could not establish a causal connection between her EEOC claims and the disqualification, because at the time of the disqualification UPS was unaware of her 2004 and 2005 claims, and the 2006 claim had not been filed. *Id.* at 1143. Although UPS delayed her reinstatement after learning of the 2006 charge, this court found the delay not materially adverse, a "mere inconvenience," because its purpose was to allow the union grievance process to play out, she was at all times employed, and was reinstated with back pay and full seniority. *Id.* at 1142. Unlike the *Jackson* case, GPI certainly knew Young-Losee had filed a formal complaint of harassment and according to her, fired her in retaliation.[1]

---

[1] GPI also cites *Battle v. Federal Express Corp.*, 156 Fed. Appx. 877, 878-79 (8th Cir. 2005), emphasizing its language that "a temporary termination that was rescinded" did not constitute retaliation. The unpublished *Battle* case is not precedent (*see* 8th Cir. R. 32.1A), precedes *Burlington*, and applies the (now) incorrect standard

To violate Title VII, the retaliation must be harmful enough that a reasonable employee would find it materially adverse. ***Burlington***, 548 U.S. at 68. An action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." ***Id.*** Being fired for making a discrimination complaint – even if rescinded after two days – might well dissuade a reasonable employee from making a complaint of harassment. The facts here meet the *Burlington* standard, as they are more than "petty slights or minor annoyances that often take place at work and that all employees experience."[2] ***Id.***

Viewing the facts most favorably to Young-Losee, there was a materially adverse action. Because there is direct evidence of retaliation, the district court erred in granting summary judgment on the retaliation claim.

\* \* \* \* \* \* \*

The judgment of the district court is reversed, and the case remanded.

———————————————

of an "adverse employment action."

[2] In view of this conclusion, this court need not address whether a reasonable trier of fact in this case could find a constructive discharge that constitutes a materially adverse action.