# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-2102
_____

Equal Employment Opportunity Commission

*Plaintiff - Appellant*

Adam Breaux

*Intervenor Plaintiff*

v.

Product Fabricators, Inc.; M&M Manufacturing, Inc., as successor

*Defendants - Appellees*

_____

No. 13-2103
_____

Equal Employment Opportunity Commission

*Plaintiff*

Adam Breaux

*Intervenor Plaintiff - Appellant*

v.

Product Fabricators, Inc.; M&M Manufacturing, Inc., as successor

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2014
Filed: August 15, 2014

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Product Fabricators, Incorporated ("PFI") terminated employee Adam Breaux. The Equal Employment Opportunity Commission ("EEOC") and Breaux appeal the district court's[1] adverse grant of summary judgment in favor of PFI. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.    BACKGROUND

PFI was a Minnesota sheet metal fabrication company formed by Michael Murphy, Sr. ("Murphy") and two others. In 1997, PFI hired Breaux as a turret operator. In 1999, PFI hired Murphy's sons, Mark and Michael Murphy, Jr. ("Mark"

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

-2-

and "Mike" respectively). In 2000, Breaux left PFI for another job, but was rehired by PFI, again as a turret operator, in March 2005. From November 2007, until Breaux's termination, Mike supervised Breaux.

In February 2008, another former PFI employee, Dennis Anderson, filed a disability discrimination charge and the EEOC initiated an investigation. On June 24, 2008, the EEOC visited PFI to interview employees, including Breaux, who was Anderson's supervisor. According to Mark's testimony, the EEOC told him that the investigators would ask whether PFI accommodated people who were injured and other such general issues, but would not mention specific employees during its questioning. Mark recalled that, after each EEOC interview, he reminded each employee that the interview was confidential, but he asked if the EEOC interviewer brought up any particular employee. According to Mark, Breaux told Mark that he was asked about Anderson and that he told the interviewer Anderson was a poor worker, at that point, Mark told Breaux not to divulge any more information about the interview. Breaux, on the other hand, claims he did not talk to anyone about the interview.

On September 4, 2008, Breaux reported a workplace injury on his right shoulder resulting from heavy lifting, which was eventually diagnosed as a right rotator cuff tear. Breaux received workers' compensation benefits from September 4, 2008, until September 16, 2010, when he settled that claim. On September 30, 2008, PFI transferred Breaux to a manufacturing supervisory position, which was less physically demanding and did not require Breaux to work outside of his medical restrictions. Breaux requested time off for medical appointments and physical therapy, which PFI allowed without issue, and Breaux supplied PFI new work restrictions after his doctor appointments. Breaux testified that he had no difficulties performing his job duties as a manufacturing supervisor. In August 2009, Breaux told Mike that his left shoulder was causing him pain, similar to the pain he felt in his right shoulder. According to Breaux, he also told Mike that he was going to see his

doctor to discuss surgery on his right shoulder. A few days later, Mike followed up with Breaux, who said that his left shoulder was "ok" or "fine." Breaux was not formally assessed for surgery until October 2009, and he never provided any documentation to PFI requesting a leave of absence for surgery on his right shoulder. But, according to Breaux's testimony, around the same time he talked to Mike about his shoulder, he "might have inquired as to the amount of time" he could take off for surgery.

During this time, beginning in May or June 2009, Breaux's management performance was suffering, and Breaux's department was performing in an untimely manner, which was impacting other departments at PFI. Mike claims that he discussed these problems with Breaux multiple times, but there is no formal documentation of these discussions. By September 1, 2009, although technically still in the supervisor position, Breaux was essentially functioning as a turret lead. According to Breaux, although he did not recall when the conversation took place, he "might've" claimed that he asked Mark if he could have more people on his crew, to which Mark replied that certain employees' medical problems were costing PFI too much money.

On September 1, 2009, PFI fired Breaux. That morning, Mark approached Breaux and asked him to sign an acknowledgment that the EEOC had spoken to Breaux about Anderson during the EEOC investigation that occurred more than a year earlier. Breaux signed the statement. At 5:00 p.m. that day, Mark and, a human resources representative, Carol Murphy, terminated Breaux's employment. Breaux asked if he was being fired because of his shoulder injury. According to Breaux, Mark replied that he did not know anything about the injury, and according to Mark and Carol's testimony, they both replied "what injury?" or "what's wrong with your shoulder?" According to PFI, prior to terminating Breaux, in July 2009, they began searching for his replacement. They advertised the position as a "turret lead," rather than a management position, because they wanted to ensure the new hire fit the

-4-

company before being placed in a management position. PFI hired Craig Baker, but he could not begin his employment until September 2, 2009. On September 9, 2009, Breaux met with his medical provider to discuss surgery on his right shoulder.

Around the same time as Breaux's termination, the EEOC pursued Anderson's Americans with Disabilities Act ("ADA") discrimination claim. The case was filed with the district court on August 31, 2009, and PFI was served with a complaint on September 9, 2009. A newspaper article regarding the Anderson lawsuit appeared in the local newspaper. The EEOC attorney phoned Michael Murphy, Sr., and left a message with a PFI employee saying the EEOC filed a lawsuit against PFI based on Anderson's claims and asked Murphy to return his call. Murphy claims he received this message on September 2, 2009. Anderson's case was settled in the fall of 2010.

During all of these events, as far back as 2001, PFI's business was struggling financially. By the summer of 2010, Murphy was looking to sell PFI's assets. By September 2010, PFI was nearly insolvent and on the verge of bankruptcy. On October 26, 2010, a company incorporated by Mike and Mark called M&M Manufacturing, Inc. ("M&M") purchased all of PFI's tangible and intangible assets. PFI began winding down after the sale and formally dissolved in January 2012.

In April 2010, Breaux filed a charge of discrimination, and on January 13, 2011, the EEOC issued a determination of reasonable cause to believe that Breaux had been terminated in violation of the ADA. Then, on July 27, 2011, the EEOC filed this case against PFI, alleging that PFI discriminated against Breaux. On September 29, 2011, the EEOC amended its complaint to add M&M as a defendant, and on December 21, 2011, Breaux intervened in the case. The EEOC and Breaux asserted ADA discrimination and retaliation claims against PFI, and Breaux asserted state law claims. The EEOC and Breaux moved for summary judgment on M&M's successor liability and PFI and M&M moved for summary judgment on the ADA claims. The district court granted summary judgment on the ADA discrimination and retaliation

claims, dismissed Breaux's state law claims, and dismissed as moot the successor liability claim against M&M. The EEOC and Breaux appeal.

## II.  DISCUSSION

We review the district court's grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party. Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). "Summary judgment is appropriate if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

### A.  Discrimination Claim

"The ADA makes it unlawful for a covered employer to discriminate against any 'qualified individual on the basis of disability.'" Id. (quoting 42 U.S.C. § 12112(a)). Pursuant to the ADA, to establish a discrimination claim, an employee must satisfy the McDonnell Douglas analysis and show that he "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his] disability." Id.; Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1021 (8th Cir. 1998). Once the plaintiff establishes this prima facie case, then a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. Young, 152 F.3d at 1021. If such reason is provided, the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for intentional discrimination. Id.

Breaux asserts that PFI discriminated against him based on his right shoulder injury and the district court erred in granting summary judgment on this claim. Assuming, without deciding, the first two elements of the prima facie case are

satisfied, we turn to the third element, causation, to discern whether Breaux was terminated on the basis of his disability.

Breaux asserts that the temporal proximity between his termination on September 1, 2009, and his August 2009 complaints regarding injuries to his left shoulder and potential surgery on his right shoulder, are indicative of causation. A temporal connection can demonstrate a causal link between an adverse employment action and the employee's disability. See Lors v. Dean, 746 F.3d 857, 866 (8th Cir. 2014) (finding a temporal connection supports causation). Breaux's testimony indicates that a conversation between himself and Mike may have taken place in August 2009, during which he made mention of seeking surgery on his right shoulder, and complained of pain in his left shoulder, but his testimony also indicates that he later stated to Mike his left shoulder was "ok." Also, Breaux did not schedule his surgery prior to his termination, nor did he request any time off for surgery. This argument also fails to consider the length of time PFI knew of Breaux's disability and accommodated him. The record indicates that PFI learned of Breaux's right shoulder injury in September 2008. After learning of the injury, PFI accommodated Breaux by moving him to a less physically demanding position in line with his new work restrictions, and did not deny him leave for his medical appointments. The year-long time period that PFI accommodated Breaux's injury negates causation; and the casual, somewhat ambiguous conversation that took place in August 2009, does not establish a causal connection between Breaux's termination and his disability.

Even if the prima facie case was established, because PFI has advanced a legitimate nondiscriminatory reason for terminating Breaux–poor performance–the burden shifted back to the EEOC and Breaux to show that PFI's proffered reason is pretext for intentional discrimination. On appeal, the EEOC and Breaux assert that in other instances of termination, it was PFI's practice to provide employees with verbal or written warnings prior to termination. Because PFI provided no such

warnings to Breaux, they argue, a genuine issue of fact exists as to whether Breaux was truly terminated for poor performance.

"A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, [or] (2) treated similarly-situated employees in a disparate manner . . . ." Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010). Whether the employees are "similarly situated" is a rigorous test because the employees used for comparison must be "similarly situated in all relevant respects." Evance v. Trumann Health Servs., LLC, 719 F.3d 673, 678 (8th Cir.) (quotation omitted), cert. denied, 134 S. Ct. 799 (2013). That is they "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. (quotation omitted).

The EEOC and Breaux fail to show pretext by either method. The evidence does not meet the rigorous "similarly situated" test. Breaux advances various instances where employees received written or verbal warnings as a result of their performance, but failed to illustrate how these employees and instances were similar to him. Nor does the evidence establish that such was the "policy" of PFI. The parties do not advance any written provision indicative of an established policy or procedure for employee discipline or termination. See Fitzgerald v. Action, Inc., 521 F.3d 867, 874 (8th Cir. 2008) (finding the employer violated its policy where the employer had a policy that the employee must be written up three times prior to being terminated, and the employer terminated an employee without any write-ups); Russell v. TG Mo. Corp., 340 F.3d 735, 746 (8th Cir. 2003) (concluding that pretext was not shown where the employer did not follow its written policy, which stated that the procedures were merely "guidelines" and not "fixed rules."). Rather, as the district court concluded, the evidence shows that prior to 2007, PFI had a human resources representative, but she left PFI, and Carol Murphy took over the human resources duties. After this transition, and in light of the financial woes facing PFI, as Mike

testified, PFI's employee appraisal process suffered, as the company focused on "trying to keep the doors open." The fact the some employees received either written or verbal reprimands, without more, does not indicate that the company had an established policy. See Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1222 (10th Cir. 2007) (finding no evidence of pretext where there was no written policy, and where testimonial evidence indicated there were "general progressive disciplinary strategies used depending on the employee and the situation"). Accordingly, PFI did not fail to follow its own policies, and the pretext argument fails. Thus, the district court correctly granted summary judgment on this ADA discrimination claim.

## B.    Failure to Accommodate Discrimination Claim

In a reasonable accommodation case, the "discrimination" is "framed in terms of the failure to fulfill an affirmative duty–the failure to reasonably accommodate the disabled individual's limitations," as required by the ADA. Peebles v. Potter, 354 F.3d 761, 767 (8th Cir. 2004). In order to determine whether an accommodation is necessary, and if so, what that accommodation may be, the employer and employee must engage in the "interactive process." Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 903 (8th Cir. 2009). To show that the employer failed to participate in the interactive process, the employee must show:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Id. at 902 (quotation omitted).

Breaux asserts that he specifically requested a reasonable accommodation–a leave of absence for surgery and recovery afterwards. The evidence, however, does

not indicate that Breaux made a specific request for an accommodation. Breaux testified that he had a conversation with Mike a few weeks prior to September 1, 2009, in which he said that he was feeling similar symptoms on his left shoulder, and that he was going to request surgery. His deposition testimony also reveals that he may have spoken with Mark about how much time he could take off for surgery, testifying that "I might have inquired as to the amount of time I would need from the doctor, I would find out how much time that I would need and let [Mark] know probably." But, Breaux did not meet with his doctor to discuss surgery until September 9, 2009, after his termination, and was not formally assessed for surgery until October 2009. This evidence, at best, demonstrates that PFI was aware of Breaux's shoulder trouble, but it does not indicate that Breaux actually requested time off for his surgery as an accommodation. While the interactive process is "informal and flexible," the "predicate requirement triggering the interactive process is the employee's request for the accommodation," Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1045 (8th Cir. 2005) (internal quotation omitted), and here Breaux failed to prove that he requested an accommodation. Accordingly, the district court properly granted summary judgment on the ADA failure-to-accommodate discrimination claim.

## C.    Retaliation Claims

The ADA also prohibits employers from discriminating against any individual because that individual "'has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" Hill, 737 F.3d at 1218 (quoting 42 U.S.C. § 12203(a)). In order to succeed on this retaliation claim, there must either be direct evidence of retaliation or an inference of retaliation must be created under the McDonnell Douglas burden-shifting framework. Lors, 746 F.3d at 865. In the absence of direct evidence, to establish such a retaliation claim under the ADA, a "plaintiff must show that (1) [he] engaged in a statutorily protected activity,

-10-

(2) the employer took an adverse action against [him], and (3) there was a causal connection between the adverse action and the protected activity." Hill, 737 F.3d at 1218. Once this prima facie case is established, the claim proceeds under the familiar McDonnell Douglas burden-shifting framework. Id. There are two alleged retaliation claims in this instant case–(1) that PFI retaliated against Breaux for requesting a reasonable accommodation and (2) that PFI retaliated against Breaux for his participation in the EEOC's Anderson investigation.

The district court concluded that the first claim failed because the evidence did not indicate that Breaux engaged in the protected activity of requesting an accommodation. See Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 907-08 (8th Cir. 2010) (clarifying that a request for an accommodation is a protected activity). As previously discussed, Breaux's complaints regarding his left shoulder and the potential need for surgery on his right shoulder were not requests for an accommodation. Accordingly, Breaux did not engage in a statutorily protected activity. Thus, the district court properly granted summary judgment on the first retaliation claim because Breaux did not establish a prima facie case. See id. at 908 (affirming the grant of summary judgment on a retaliation claim where there was not a protected activity).

As to the second retaliation claim, the EEOC and Breaux contend that Breaux was fired in retaliation for his participation in the EEOC's investigation relating to the Anderson lawsuit. The district court concluded that the parties failed to establish the prima facie case on this claim because the record did not support a causal connection between Breaux's termination and his participation in the EEOC interview. Neither the EEOC nor Breaux argue that there is direct evidence of retaliation here, thus the McDonnell Douglas analysis is appropriate.[2]

_____

[2]To be sure, this case is distinguishable from our court's Young-Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909 (8th Cir. 2011), where we found direct

Beginning with the prima facie case, again, we assume without deciding that the first two elements of the prima facie case were established, and turn to whether there was a causal connection between Breaux's participation in the EEOC's interview and his termination. In June 2008, the EEOC interviewed a number of PFI employees, including Breaux, relating to Anderson's discrimination claim. Over a year later, prior to, but on the same date as, Breaux's termination, Mark asked Breaux to sign an acknowledgment that indicated the EEOC interviewer specifically mentioned Anderson in the interview. According to Mark's testimony, "[he] wanted to get something on record that . . . the EEOC . . . did something they said they

_____

evidence of retaliation. In Young-Losee, Young-Losee complained to multiple people and filed a "formal complaint" with the human resources representative regarding harassment by her supervisor. Id. at 911. On May 6, Young-Losee met with the plant supervisor, James Shelley, and two other managers regarding her formal complaint. Id. at 911. At this meeting Young-Losee was not allowed to speak and, eventually, Shelley wadded up her complaint, threw it in the garbage can, told her it was "total bullshit," and said, "I want you out of here." Id. Young-Losee left the meeting under the impression she was fired and did not return to work. Id. In Young-Losee, we concluded that Shelley's actions of wadding up the complaint, calling it "total bullshit," and throwing it in the garbage can, followed by telling her to leave and that he never wanted to see her again, was direct evidence of retaliation. Id. at 912. Unlike the evidence in Young-Losee, the evidence here does not reflect direct evidence of a connection between Breaux's participation in the EEOC interview and his termination. Young-Losee was terminated during a meeting discussing her harassment complaint, at which Shelley disregarded Young-Losee's complaint and terminated her employment. The meeting's purpose was to address the complaint and took place within a month of Young-Losee's initial complaint of harassment. Here, over a year had passed between Breaux's participation in the Anderson interview and his termination. Nor is there evidence presented that Mark disfavored Breaux's participation in the interview, unlike the Young-Losee supervisor. Also, when Breaux was terminated on September 1, 2009, there was no mention of his participation in the EEOC investigation. Thus, unlike Young-Losee, there is no direct evidence, necessitating the McDonnell Douglas burden-shifting analysis here.

-12-

wouldn't do." Breaux's testimony supports this contention, as he indicated that Mark had him sign the statement because "we weren't supposed to bring [Anderson's] name up."

Not only does the acknowledgment signed by Breaux fail to create a causal link, but the protected activity of participating in the EEOC interview and Breaux's termination are not sufficiently temporally proximate to support causation. "'Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine issue of fact on retaliation.'" Lors, 746 F.3d at 865 (quoting Sisk v. Picture People, Inc., 669 F.3d 896, 900 (8th Cir. 2012)). Although there is no definitive line drawn to show at what point a temporal connection establishes causation, we have held that "'two months is too long to support a finding of causation without something more,'" Id. at 866 (quoting Sisk, 669 F.3d at 901). Given that Breaux engaged in the protected activity a year prior to his termination, the temporal connection here does not support a finding of causation.

Unique to this case is the fact that PFI had Breaux sign the acknowledgment regarding his EEOC interview prior to terminating Breaux later the same day. PFI had Breaux sign the acknowledgment in an attempt to gather evidence that could potentially be necessary in the Anderson case. Breaux also testified that PFI sought the acknowledgment for such purpose. (Breaux and the EEOC identify no facts inferring that Breaux's statement to the EEOC was negative.) The parties dispute whether PFI knew that the EEOC had filed the Anderson lawsuit at the time of Breaux's termination. On August 8, 2008, the EEOC notified PFI that reasonable cause existed to believe that PFI discriminated against Anderson, and on August 31, 2009, the EEOC filed the lawsuit against PFI. The following day, September 1, 2009, an article regarding the lawsuit appeared in the local newspaper. The EEOC lawyer left a message for Murphy on August 31, 2009, which Murphy claims he received on September 2, 2009. PFI received service of the complaint in the Anderson matter on

-13-

September 9, 2009. Breaux asserts that upon filing the lawsuit, "PFI came to understand that Breaux's testimony might have subjected them to liability [because] [a]t that time, it was [PFI's] understanding that Breaux was the only employee from PFI to discuss anything with the EEOC related to the Anderson lawsuit." But, even assuming PFI did know of the lawsuit, this assertion is mere speculation, as PFI could have made such a conclusion one year earlier when the EEOC notified PFI that reasonable cause existed. This speculation, without more, does not establish causation. Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995) ("to withstand the motion for summary judgment, [the non-moving party] must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation." (alterations in original) (quotation omitted)). The coincidence that the EEOC filed the Anderson lawsuit the day prior to Breaux's termination does not establish causation to support the claim that PFI discriminated against Breaux in retaliation for his participation in the EEOC interview.

Moreover, as with the other claims analyzed under the McDonnell Douglas framework, even where the evidence establishes the prima facie case, the burden shifts to PFI to offer a nonretaliatory reason for discharge, which it has done here–Breaux's poor performance. See Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007) (applying the McDonnell Douglas test in a retaliation case). The EEOC and Breaux, then, are required to present evidence that the proffered reason for termination is pretext. Id. Breaux advances the same pretext argument as he did in his discrimination claim, and for the same reasons addressed above, the evidence here does not demonstrate that PFI's reason for termination was pretext for retaliation. Accordingly, this retaliation claim fails. The district court properly granted summary judgment on the retaliation claims.

Because the district court properly dismissed the discrimination and retaliation claims, we affirm its dismissal of the successor liability claim, see Prince v. Kids Ark

-14-

Learning Center, LLC, 622 F.3d 992, 994-95 (8th Cir. 2010) (successor liability is dependent upon finding liability), and the state law claims, see Butler v. Crittenden Cnty., Ark., 708 F.3d 1044, 1047 (8th Cir. 2013) (affirming the district court's decision to decline to exercise supplemental jurisdiction on the state law claims, when summary judgment was granted on the federal law claims).

## III. CONCLUSION

Accordingly, we affirm the judgment of the district court.

_____