# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2852

_____

| | |
|---|---|
| Doyle Ollis, Jr., | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Nebraska. |
| HearthStone Homes, Inc., a Nebraska | * |
| Corporation, | * |
| | * |
| Appellant. | * |

_____

Submitted: February 13, 2007
Filed: July 27, 2007

_____

Before RILEY, MELLOY, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

HearthStone Homes, Inc. (HearthStone) appeals the district court's[1] denial of HearthStone's motion for judgment as a matter of law and the district court's grant of attorney fees in favor of Doyle Ollis Jr. (Ollis). We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I.  BACKGROUND

Ollis worked as a sales associate from August 2000 to October 2003 for HearthStone, a company in the business of building and selling homes.  Ollis is a member of the Assemblies of God Church, which is a Protestant Christian church. John Smith (Smith) is the owner and president of HearthStone.  Smith believes in reincarnation and a person's traumas in past lives can explain his or her behavior in the present life.  Rachel Langford (Langford), a senior sales associate, was the initial leader of Ollis's sales team to whom Ollis could direct any complaints.

During Ollis's tenure at HearthStone, on certain occasions, HearthStone used Mind Body Energy (MBE) sessions to "cleanse [the] negative energy" from its employees in order to enhance their work performance.  HearthStone encouraged and paid for its employees to attend an MBE course in California which required participants to read *The Tibetan Book of Life*, discussing Buddhist and Hindu teachings.  HearthStone also required its employees to carry a card setting forth the company's core values.  HearthStone's core values include spirituality and leaving behind all experiences from past lives, as well as the beliefs that everything in the universe is connected (including animals and past lives) and that uncorrected problems from past lives must be corrected in the present life.

HearthStone employed MBE coaches (including one who openly claimed to speak with animals) to assist employees in releasing negative energy from the body. HearthStone management encouraged employees to schedule appointments with these coaches for MBE sessions.  Smith's wife, Pamela Winters-Smith (Winters-Smith), the director of associate self-development and manager of HearthStone's human resource department, kept a record of the employees' MBE appointments and attendance.  John Risley (Risley), a former sales manager at HearthStone, testified he felt MBE sessions were a job requirement.

Ollis told Langford the MBE sessions made him uncomfortable, MBE was cult-like and conflicted with his religious beliefs, and he did not want to participate in MBE activities. Langford did not report Ollis's religious concerns to her boss, Smith, because Langford feared losing her job, if she did make such a report. Langford advised Ollis to make a standing appointment with the least offensive MBE coach, but to cancel those appointments later, in order to give management the impression "he bought into MBE concepts." Ollis followed Langford's instructions and canceled five of his twelve appointments. Ollis further testified he also told Risley and Smith about his discomfort with MBE. Ollis expressed his disagreement with MBE at company sales meetings, and Ollis conveyed to Smith that MBE was fundamentally against his religious beliefs.

According to Smith, an employee's negative energy could be discovered either through a machine that tests a person's electromagnetic energy field or through a manual process called "muscle testing." Muscle testing may require a person to extend his or her arms while answering "yes" or "no" questions. If the person's extended arms remain strong while questioned as someone pushes down on the arms, the answer is "yes," whereas, weak arms indicate an answer of "no." Another example of muscle testing is to place two fingers together and to answer "yes" or "no" questions. If the fingers remain together, the answer is "yes"; whereas, if they separate, the answer is "no."

Smith used muscle testing to make business decisions. Smith equates muscle testing "to someone who may pray before they make decisions." On one occasion, HearthStone experienced drainage problems in one of its subdivisions. Smith determined, through muscle testing, Langford's ancestors had perished on that land during the Ice Age and Langford unknowingly was back to defend the land on behalf of her ancestors. HearthStone required Langford to attend MBE coaching sessions to cleanse her negative energy. On another occasion, Smith determined a particular subdivision was carrying negative energy, and some employees participated in a

ceremony where the employees stood in a circle holding hands to clear negative energy.

In late September 2003, HearthStone hired Sarah Audas (Audas) to work as a sales associate under Ollis's supervision. Approximately two weeks after Audas commenced work, Audas called Risley at home to tell him she was uncomfortable with certain sexual comments Ollis made to her and requested reassignment. Risley reported the situation to Winters-Smith, who met personally with Audas to discuss her complaint. Thereafter, the HearthStone management team (which included Winters-Smith, Risley, and Smith) met with Ollis to discuss Audas's complaint. The next day, the management team asked Ollis to prepare a written response. Ollis responded he had "crossed [the] boundaries" when he asked Audas several inappropriate questions while working together. Those questions included asking Audas about her "freakiest" sexual encounter, how long she had known her spouse before she had sex with him, how many sexual partners she had, and if she wore thong underwear.[2]

The management team reviewed Ollis's response and, on October 31, 2003, terminated Ollis for "poor leadership and lack of judgment." Ollis's official termination did not include any reference to sexual harassment. Smith testified he used "muscle testing" in his decision to terminate Ollis.

Ollis filed a lawsuit alleging religious discrimination and retaliatory discharge. Ollis claimed HearthStone's sexual harassment basis for his discharge was pretextual. At trial, the jury found in favor of Ollis, but awarded Ollis only nominal damages of $1.00. Holding there was sufficient evidence to support the verdict, the district court

---

[2]At trial, Ollis claimed Audas was sexually provocative and Audas initiated the sex talk. Ollis alleged HearthStone may have set him up by assigning Audas to Ollis's supervision. There was testimony indicating HearthStone later terminated Audas after she reportedly "removed her clothing at a golf outing and was doing cart-wheels naked on a golf course."

denied HearthStone's motion for judgment as a matter of law and granted Ollis's motion for attorney fees and costs. This appeal followed.

## II. DISCUSSION

### A. Motion for Judgment as a Matter of Law

HearthStone argues there was insufficient evidence to support Ollis's claims for religious discrimination and retaliation and the district court erred in denying HearthStone's motion for judgment as a matter of law. We disagree.

We review de novo the district court's denial of HearthStone's motion for judgment as a matter of law. See Employers Mut. Cas. Co. v. Collins & Aikman Floorcoverings, Inc., 422 F.3d 776, 779 (8th Cir. 2005). We review the evidence in the light most favorable to Ollis and do not engage in weighing or evaluating the evidence, nor will we decide any questions of credibility. Id. Judgment as a matter of law is proper only when there is no legally sufficient evidentiary basis for a reasonable jury to find for the prevailing party. See Wedow v. City of Kan. City, Mo., 442 F.3d 661, 669 (8th Cir. 2006). We will not set aside a jury verdict unless there is a complete absence of probative facts to support the verdict and only speculation supports the verdict. Id.

#### 1. Religious Discrimination

To establish a prima facie case of religious discrimination, a plaintiff must show he (1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of such conflict, and (3) suffered an adverse employment action. See Seaworth v. Pearson, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam). If the plaintiff establishes these elements, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. See Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005). Thereafter, the burden shifts back to the plaintiff to show the reason offered by the employer is pretextual. Id.

-5-

In this case, the record indicates Ollis held sincere Christian religious beliefs. The record also provides some support for Ollis's contention HearthStone required Ollis to attend MBE sessions to "cleanse negative energy." These sessions involved affirming the belief in past lives, participating in ritual-like activities, and reading Hindu and Buddhist literature. Ollis testified the MBE sessions conflicted with his religious beliefs. Thus, Ollis satisfied the first element of his prima facie case, that is, he has a bona fide religious belief that conflicts with a HearthStone employment requirement.

Ollis also satisfied the second element of his prima facie case. Ollis testified he informed Smith and Langford of the conflict between the MBE requirements and his religious beliefs. Ollis testified he expressed his disagreement with HearthStone's core values at company meetings where Smith was present. Ollis told Smith he declined to participate in after-hours sessions designed to "clear some Mind Body Energy work." Finally, Ollis satisfied the third element of his prima facie case, that is, he suffered an adverse employment action, termination.

HearthStone argues it terminated Ollis because of the sexual harassment complaint Audas filed against Ollis. However, Ollis's termination was for "poor leadership and lack of judgment," without reference to sexual harassment. Testimony at trial indicates (1) Ollis canceled many of his MBE coaching sessions, (2) HearthStone kept a record of Ollis's attendance at these sessions, (3) attendance at the MBE meetings was reasonably perceived as an employment requirement, and (4) Ollis complained about MBE sessions. Based on this evidence, a reasonable jury could determine HearthStone's proffered reasons for Ollis's termination were pretextual. Although the evidence is thin, we find there was a sufficient evidentiary basis for a reasonable jury to find in Ollis's favor on his claim of religious discrimination.

### 2. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show (1) he engaged in a statutorily protected activity, (2) an adverse action was taken against him by his employer, and (3) a causal connection between the adverse action and the protected activity. See Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005). "Statutorily protected activity includes opposing an act of discrimination made unlawful by Title VII." Id. If the plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. See Mershon v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006). The burden then shifts back to the plaintiff to show the reason offered by the employer is pretextual. Id.

The evidence at trial included testimony indicating: (1) MBE sessions conflicted with Ollis's religious beliefs; (2) Ollis expressed disagreement regarding the MBE concept to Langford and Smith; (3) HearthStone arguably required attendance at MBE meetings; and (4) HearthStone kept track of Ollis's attendance at MBE sessions. A jury reasonably could have concluded Ollis engaged in a statutorily protected activity, that is, Ollis complained to HearthStone about a conflict between the subject matter at the MBE sessions and his religious beliefs. Likewise, the jury reasonably could have concluded HearthStone terminated Ollis because of Ollis's complaints about attending and his failure to attend the MBE sessions. Finally, the jury reasonably could have concluded HearthStone's proffered reason of sexual harassment for terminating Ollis was mere pretext. A sufficient evidentiary basis exists for a reasonable jury to find in Ollis's favor on his retaliation claim.

### B. Attorney Fees

HearthStone also argues the district court abused its discretion in awarding Ollis attorney fees and costs. HearthStone contends the district court "should have awarded very minimal fees or no fees at all." We review the district court's award of attorney fees for abuse of discretion. See Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 994 (8th Cir. 2003).

HearthStone argues Ollis should not have been awarded attorney fees because the jury awarded him nominal damages of $1.00. Again, we disagree. Regardless of the amount of Ollis's judgment, Ollis was the prevailing party and, thus, is entitled to an award of attorney fees. See Farrar v. Hobby, 506 U.S. 103, 112-14 (1992) (recognizing a prevailing party could be one who only recovers nominal damages). Therefore, the district court properly determined attorney fees could be awarded in this case.

The district court also properly determined the amount of attorney fees. The district court correctly multiplied the number of hours reasonably expended on the litigation times a reasonable hourly rate based on the prevailing market rates in the relevant community. See Blum v. Stenson, 465 U.S. 886, 895-96 (1984).[3] The district court also concluded Ollis's failure to prove compensatory damages merited a reduction, and the district court then reduced the award calculation by 25%. We find no abuse of discretion in either the manner in which the district court awarded attorney fees to Ollis or the amount awarded.

## III. CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.

_____

---

[3]In addition, the district court also considered: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. St. Louis Fire Fighters Ass'n v. City of St. Louis, Mo., 96 F.3d 323, 332 n.10 (8th Cir. 1996).