# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2963

_____

Janice Hustvet

*Plaintiff - Appellant*

v.

Allina Health System

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 12, 2018
Filed: December 7, 2018

_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Janice Hustvet sued her former employer, Allina Health System ("Allina"), alleging violations of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"), after Allina terminated Hustvet's employment for refusing to fulfill a job requirement that she take necessary steps to

develop immunity to rubella. Hustvet appeals the district court's[1] adverse grant of summary judgment to Allina. After de novo review of the record, we affirm.

## I. Background

Allina is comprised of thirteen hospitals and approximately ninety clinics in Minnesota and western Wisconsin. In 2013, one of the Allina system's entities, Sister Kenny Rehabilitation Institute, merged with an entity called Courage Center, where Hustvet was employed. This resulted in the establishment of the Courage Kenny Rehabilitation Institute ("CKRI"). CKRI consisted of Allina's rehabilitation clinics and inpatient and outpatient rehabilitation facilities. A goal of the merger was to help Allina "provide comprehensive start to finish types of care for patients" needing rehabilitation services.

In March 2013, the Courage Center first announced to its employees that the merger had been officially approved and that they would become employees of Allina Health on June 1, 2013. Allina offered employment to all Courage Center employees who met Allina's conditions for employment, which were outlined in a May 2, 2013 letter, and which included a pre-placement health assessment screen. The health screen included tracking for immunity to certain communicable diseases, as well as a Respirator Medical Evaluation ("RME"), which was based on an OSHA form, and asked questions about potential health conditions directed at evaluating safe respirator fit and use.

At the time of the merger, Hustvet had worked at Courage Center for roughly fifteen years, most as an Independent Living Skills Specialist ("ILS"). Hustvet's general role as an ILS was "[t]o educate, support and assist clients with disabilities

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

in developing and maintaining their maximum level of independence in their home and community." Much of the job involved providing services tailored to the individual client, such as "nutrition and cooking, financial management, time management, household organization, health care management, housing, etc." The clients Hustvet worked with included those who were disabled because of spinal cord injuries, brain injuries, and illnesses. All of these clients were treated as if they had "compromised" or "fragile" immune systems.

On May 13, 2013, Hustvet completed her pre-placement health assessment and stated that she did not know whether she was immunized for rubella. Later that month, testing confirmed that she was not immunized for rubella. Hustvet also turned in a RME Form but, as authorized by her Courage Center supervisor, did not fill in the information other than stating her identifying information and writing "N.A." near the top of the form. Hustvet's supervisor told her that the RME did not relate to her position as an ILS.

After the merger, on or about July 1, 2013, Allina told Husvet that she would need to submit a complete RME, explaining it was required for all employees with patient/client contact. Allina also told Hustvet she needed to develop immunity to rubella by taking one dose of a Measles, Mumps, Rubella vaccine ("MMR vaccine"). Hustvet failed to satisfy either request, but at one point said she was willing to complete the RME. Ultimately, however, Hustvet never completed the RME or developed immunity to rubella.

Hustvet explained to an Allina representative that she was concerned about taking the MMR vaccine, stating that her "health is of the utmost concern" and that she previously "had severe cases of mumps and measles, the MM part of the MMR." Hustvet also told Allina that she had many allergies and chemical sensitivities, and

so she needed to limit her "exposure."[2]  Hustvet inquired about a rubella-only vaccine, with which an Allina representative expressed satisfaction.  However, Hustvet later discovered such a vaccine was not available.  On July 10, 2013, after confirming that Hustvet refused to become immunized, Allina terminated Hustvet's employment, explaining that due to her refusal to comply with immunity requirements and her failure to complete the RME, she had voluntarily resigned her position.

Hustvet then sued Allina, alleging discrimination, unlawful inquiry, and retaliation claims under both the ADA and the MHRA.  Hustvet and Allina filed cross-motions for summary judgment.  The district court denied Hustvet's motion and granted Allina's motion, dismissing all of Hustvet's claims with prejudice.  Hustvet timely appealed.

## II. Discussion

Hustvet challenges the district court's summary judgment on her federal and state unlawful inquiry claims, failure-to-accommodate claims, and retaliation claims.  We consider each under a de novo standard of review.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

When considering the evidence, we make "all reasonable inferences 'in the light most favorable to the nonmoving party.'" *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1066 (8th Cir. 2017) (quoting *Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014)).  "Summary judgment shall be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

---

[2]Hustvet had also suffered from seizures decades before, but controlled her condition with medication.  When discussing the rubella vaccination requirement with an Allina representative, she did not mention her seizures.

-4-

This court may affirm the grant of summary judgment "for any reason supported in the record, even if that reason is different from the rationale of the district court." *Wierman v. Casey's General Stores*, 638 F.3d 984, 1002 (8th Cir. 2011). This is true "even if [the district court] committed legal error in reaching the correct result." *Id.*

## A.  Unlawful Examination Claims

Hustvet claims Allina violated the ADA and the MHRA when it required her to complete a health screen as a condition of employment. The district court concluded Hustvet did not suffer tangible injury as the result of refusing to complete the health screen and therefore her claim failed as a matter of law. Although we disagree with the district court's rationale, we ultimately affirm the summary judgment order because the undisputed facts show the health screen complied with the ADA and the MHRA.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Subsection (a)'s prohibition against discrimination includes medical examinations and inquiries. *Id.* § 12112(d)(1).

The ADA does not forbid all medical examinations and inquiries. Their permissibility and scope varies depending on the stage of employment. *See id.* §§ 12112(d)(2)–(4); *Cossette v. Minn. Power & Light*, 188 F.3d 964, 968 (8th Cir. 1999). Employers are generally prohibited from making any disability-related inquires or requiring medical examinations of applicants before offering employment. *See* 42 U.S.C. § 12112(d)(2)(A). After an offer has been made, however, the ADA "permits employers to require a medical examination of a prospective employee . . .

-5-

and it permits them to condition a final offer of employment upon the results of the examination only under certain circumstances." *Cossette*, 188 F.3d at 968 (citing 42 U.S.C. § 12112(d)(3)). The ADA meanwhile generally prohibits employers from requiring current employees to undergo medical examinations or inquiries unless the employer can demonstrate they are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4).

If a violation occurs, it is not necessary that an applicant be disabled to bring a claim under § 12112(d). *See Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). The applicant must, however, establish the prospective employer's "violation of the ADA caused some sort of tangible injury." *Cossette*, 188 F.3d at 970.

Relying on our decision in *Cossette*, the district court held that Hustvet's inquiry claim failed as a matter of law because Hustvet did not suffer any tangible injury. The district court based this conclusion on its finding that Hustvet's injury—the loss of her job—occurred not because she refused to complete the health screen, but instead because she did not develop immunity to rubella. Hustvet argues the district court's analysis was improper because the evidence showed that Allina terminated Hustvet's job, at least in part, because she failed to complete the health screen.

We agree with Hustvet that it was improper for the district court to award summary judgment to Allina under the rationale that Hustvet was not injured. Allina employee Heather Lindblom sent an email to Hustvet clearly stating that completion of the health screen was a condition of her employment and Hustvet was "voluntarily terminating" her position due to her refusal "to finish the assessment and get the MMR and fill out the Respiratory form." This evidence, viewed in the light most favorable to Hustvet, demonstrates that Hustvet suffered tangible injury as a result of her refusal to finish the health screen. Therefore, the district court's rationale cannot support dismissing Hustvet's inquiry claim as a matter of law.

This does not end our analysis, however, since we may affirm the award of summary judgment for any reason supported in the record. *See Wierman*, 638 F.3d at 1002. Here, we conclude Allina's required health screen was consistent with the ADA's requirements.

In making this assessment, we first address Hustvet's employment status at the time she was required to complete the health screen. Hustvet argues she never received an offer of employment and thus the medical examinations and inquiries were impermissibly made before an offer of employment. Alternatively, she argues she was a "continuous" employee and the health screen requirement was imposed after she was employed. Either way, Hustvet contends "Allina cannot rely on the 'entrance examination' standards." Allina, on the other hand, argues the health screen was a condition of employment enforced *after* its offer of continued employment and before Hustvet began working as an employee of Allina, and is therefore governed by 42 U.S.C. § 12112(d)(3).

We are inclined to agree with Allina that the health screen was an entrance examination governed by 42 U.S.C. § 12112(d)(3). It is undisputed that Hustvet received a letter confirming she, as a Courage Center employee, would "soon be" an employee of Allina on the merger date, so long as she met the health screen requirements. The letter clarified that the health screen needed to be completed *before* her employment with Allina. The fact that her job was ultimately terminated after the merger occurred, when Allina officials discovered Hustvet's failure to complete the health screen, does not change the fact that Allina had required action before her placement as an Allina employee.

Ultimately, however, we need not resolve this question because the health screen was permissible even if Hustvet was considered Allina's employee at that

time.[3]  As to employees, "[t]he ADA prohibits employers from 'requiring a medical examination . . . unless such examination . . . is shown to be job-related and consistent with business necessity.'" *Parker v. Crete Carrier Corp.*, 839 F.3d 717, 722 (8th Cir. 2016) (quoting 42 U.S.C. § 12112(d)(4)(A)).  The employer must establish the exam or inquiry is job-related, the business necessity for the exam or inquiry is vital to the business, and the exam or inquiry is no broader or more intrusive than necessary. *See id.*  "Courts will readily find a business necessity if an employer can demonstrate . . . a medical examination or inquiry is necessary to determine . . . whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." *Id.* (ellipses in original) (quoting *Thomas*, 483 F.3d at 527).  The examination or inquiry must be a reasonably effective way to accomplish the employer's goals.  *See id.*

Further, we have explained that "[w]hen an employer requires a *class* of employees to submit to a medical exam, it also 'must show that it has reasons consistent with business necessity for defining the class in the way that it has.'" *Id.*

---

[3]As mentioned above, the requirements are less strict if the exam or inquiry is given to prospective employees who have already been offered jobs. *See, e.g., EEOC v. BNSF Railway Co.*, 902 F.3d 916, 922 (9th Cir. 2018) ("Unlike examinations conducted at any other time, an employment entrance examination need *not* be concerned solely with the individual's ability to perform job-related functions . . . nor must it be job-related or consistent with business necessity.") (internal quotation omitted).  Subsection (d)(3) generally permits an employer to make its offer of employment conditional upon the results of a medical examination (and/or inquiry) so long as certain conditions are met, such as that all employees are subjected to the examination (and/or inquiry) regardless of disability, the information is kept confidential, and the criteria used to screen employees are job-related and consistent with business necessity.  *See* 42 U.S.C. §§ 12112(d)(3)(A)–(C); 29 C.F.R. § 1630.14(b).   Minnesota law also expressly permits post-offer, pre-employment medical examinations that test for essential job-related abilities.  Minn. Stat. § 363A.20, subdiv. 8.

(quoting *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 101 (2d Cir. 2003)). This burden is satisfied when the employer can show "a 'reasonable basis for concluding' that the class poses a genuine safety risk and the exam requirement allows the employer to decrease that risk effectively." *Id.* at 722–23 (quoting *Conroy*, 333 F.3d at 101.) When defining the class, we do not require precision, as defining the class in a reasonable manner is sufficient.

In *Parker*, we affirmed the grant of summary judgment to a trucking company on its employee's claim that the trucking company violated the ADA by requiring all employees with a Body Mass Index over a certain criteria undergo a sleep study examination to test for sleep apnea. 839 F.3d at 719–20. We concluded the mandatory sleep study in *Parker* was job-related because it dealt with a condition that could impair its drivers' ability to operate their vehicles and it was consistent with a business necessity because the sleep study was needed to decide whether the drivers had a condition that posed a public safety hazard. *Id.* at 723. We reasoned the exam was not more intrusive than necessary because the sleep study exam was the best way to test for the condition. *Id.*

As in *Parker*, we believe Allina's decision to force a class of employees (those employees with client contact who merged into the company) to undergo a health screen was job-related and consistent with a business necessity. The information requested and the medical exam, which tested for immunity to infectious diseases, were related to essential, job-related abilities. The undisputed evidence shows that the purposes of Allina's health screen were to (a) ensure that incoming employees who might come into contact with clients had immunity to communicable diseases as recommended by the Centers for Disease Control and Prevention ("CDC") and Joint Commission accreditation requirements, as well as in furtherance of Allina's overarching internal policy of ensuring employee and patient safety by decreasing the risk of communicable disease exposure and transmission; and (b) determine whether

it was medically safe for incoming employees who may come into contact with clients to wear a respirator in the event of an emerging disease outbreak.

Allina's testing of future employees who work with clients for immunization to certain diseases, including rubella, would reveal if they posed a risk of spreading those diseases to Allina's clients. The fact that rubella has been eliminated in the United States does not mean testing for immunity to this specific disease was unnecessary or more intrusive than necessary. While the evidence shows that "[a]s a result of widespread immunization, rubella does not circulate in the United States," it "remains a common disease in many parts of the world," "can be contracted through foreign travel" and is particularly dangerous to expectant mothers and infants. The CDC recommends that the "[r]ubella vaccine should be given to people without evidence of immunity, and everyone should be brought up to date with age-appropriate vaccination (one or two doses) unless contraindicated or risk outweighs the benefit due to precautions." This is particularly true for healthcare professionals and those working in heathcare settings.

In light of this evidence, we conclude that Allina's decision to require those incoming Courage Center employees with client contact to complete an inquiry and exam was job-related, consistent with business necessity, and no more intrusive than necessary. We therefore affirm the summary judgment awarded to Allina.

For similar reasons, we affirm the grant of summary judgment to Allina on Hustvet's MHRA claim. Minnesota law provides that "[e]xcept when based on a bona fide occupational qualification, it is an unfair employment practice for an employer . . . , before a person is employed by an employer . . . to . . . require or request the person to furnish information that pertains to . . . disability . . . , or, subject to section 363A.20, to require or request a person undergo a physical examination." Minn. Stat. § 363A.08, subd. 4(a)(1). Under Minnesota law, where consideration for the public safety is involved, an employer who attempts to rely on the bona fide

occupational qualification must only establish "there is a rational basis in fact to believe that elimination [of the bona fide qualification] would increase the likelihood of risk of harm" to the employer's clients. *Lewis ex rel. Welles v. Metro. Transit Comm'n*, 320 N.W.2d 426, 431 (Minn. 1982). For the reasons discussed above, we conclude there was a rational basis in fact to believe the elimination of the immunity and respirator-fit requirements would increase the risk of harm to Allina's immunity-compromised patients.

## B. Failure-to-Accommodate Claims

We next address Hustvet's failure-to-accommodate claims. Both the ADA and the MHRA prohibit employers from discriminating against qualified individuals on the basis of disability. *See* 42 U.S.C. § 12112(a); Minn. Stat. § 363A.08, subd. 2. "This includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.'" *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016) (quoting 42 U.S.C. § 12112(b)(5)(A)). *See also* Minn. Stat. § 363A.08, subd. 6 (setting forth the MHRA's reasonable accommodation standard).

"As a threshold matter, [Hustvet] must produce sufficient evidence to demonstrate that [she] has a disability within the meaning of the ADA." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 713 (8th Cir. 2003). A person is disabled for purposes of an accommodation claim if he or she has "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual" or has "record of such an impairment." 29 C.F.R. § 1630.2(g)(1)(i) and (ii). *See also* 29 C.F.R. § 1630.2(o)(4) (providing that a covered entity "is not required to provide a reasonable accommodation to an individual who meets the

definition of disability solely under the 'regarded as' prong (paragraph (g)(1)(iii) of this section)").[4]

A plaintiff "must also establish a failure to accommodate [her] disability." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015). To determine the necessity of an accommodation, the employee and employer must engage in an interactive process. *Id.* "This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert [her] employer to the need for an accommodation and provide relevant details of [her] disability." *Id.*

> A disabled employee must demonstrate the following factors to show that an employer failed to participate in the interactive process: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

---

[4]The MHRA defines a "disability" as "any condition or characteristic that renders a person disabled." Minn. Stat. § 363A.03, subd. 12. "A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Id.* As the district court noted, the Minnesota Supreme Court at one point did state that because of its use of "materially" instead of "substantially," the MHRA's standard is "less stringent" than the ADA standard. *See Sigurdson v Carl Bolander & Sons Co.*, 532 N.W.2d 225, 228 (Minn. 1995). However, Congress has since amended the ADA by lowering the "substantially" standard in 2008. *See* 42 U.S.C. § 12102(4)(B) (incorporating ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2, 122 Stat. 3553). We agree with the district court that "[b]ecause the standards now appear to align, and because Hustvet does not make any argument that she is materially (as opposed to substantially) limited in her performance of major life activities, the Court analyzes her claims under the amended ADA standard." *Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734, 739 n.2 (D. Minn. 2017).

-12-

*Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009) (quotation omitted).

Furthermore, in order for the accommodation to be reasonable, the request must relate to the individual's disability. *See Peebles v. Potter*, 354 F.3d 761, 769 (8th Cir. 2004) (explaining "an exception to a rule that is not necessitated by the individual's disability is presumptively unreasonable"); *Allen v. Interior Constr. Servs. Ltd.*, 214 F.3d 978, 982 (8th Cir. 2000). *See also Liljedal v. Ryder Student Transp. Servs. Inc.*, 341 F.3d 836, 842 (8th Cir. 2003) (stating "[t]he MHRA requires an employer to accommodate known limitations so an employee can perform her job, but a requested accommodation must relate to the limitation"). When the "accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie. Put another way, there must be a causal connection between the major life activity that is limited, and the accommodation sought." *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2007); *accord Liljedal*, 341 F.3d at 842.

Hustvet argues on appeal that she is in fact disabled because her chemical sensitivities and allergies derive from an immune system disability and she suffers from a seizure disorder. Hustvet maintains that she appropriately requested an accommodation for these disabilities to Allina, by asking it to permit her to forgo becoming immunized to rubella.

There is insufficient evidence in the record to support the conclusion that Hustvet's chemical sensitivities or allergies substantially or materially limit her ability to perform major life activities. She has never been hospitalized due to an allergic or chemical reaction, never seen an allergy specialist, and never been prescribed an EpiPen. Nor has she ever sought any significant medical attention when experiencing a chemical sensitivity, taken prescription medication because of a serious reaction, or had to leave work early because of a reaction. Instead, the

-13-

record reveals that Hustvet has garden-variety allergies to various items that moderately impact her daily living. This is not enough for a reasonable fact-finder to conclude she is disabled.

As to Hustvet's claim that she suffers from a seizure disorder, assuming it qualifies as a disability, we conclude that this purported disability cannot support a failure-to-accommodate claim for two reasons. First, Hustvet did not tell Allina that she needed an accommodation because she had a seizure disorder, nor did she plead it as part of her case. Second, the record shows her issue with seizures was decades ago and there is no evidence supporting the notion that Allina had reason to know about her past episodes. "The ADA does not require clairvoyance," and considering these circumstances, Allina "was not obligated to divine the presence" of Hustvet's past seizure disorder as a disability requiring an accommodation. *Miller v. Nat'l Cas. Co.*, 61 F.3d 627, 630 (8th Cir. 1995) (quotation omitted). Allina cannot be faulted for failing to accommodate a disability of which it was not aware.

In addition, the accommodation she sought did not sufficiently relate to her purported disability. As the district court explained, while the live virus in the MMR vaccine presents a "very small, but possible risk, of having a seizure," the CDC does not consider past seizures to be a contraindication or even a precaution for the vaccine. We are unconvinced the accommodation sought related to her purported disability in a meaningful way.

For all of these reasons, we affirm the district court's grant of summary judgment on Hustvet's failure-to-accommodate claims under the ADA and MHRA.[5]

## C. Retaliation Claims

Finally, we address Hustvet's argument that she was retaliated against under the ADA and MHRA for refusing to comply with Allina's health screen requirements, which she maintains was protected conduct. The ADA and the MHRA forbid employers from discriminating against any individual because that individual "has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 12203(a).

To prevail on a retaliation claim, "there must either be direct evidence of retaliation or an inference of retaliation must be created under the *McDonnell Douglas* burden-shifting framework." *EEOC v. Product Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir. 2014). Under the burden-shifting test, the plaintiff must first produce evidence of a prima facie case by showing three elements: (1) the plaintiff

---

[5]We also reject Hustvet's argument that Allina's purported "no-accommodate" policy toward requiring immunity to certain diseases is akin to a "100% healed" policy, under which employees are forbidden to work until they are fully healed. Courts have found such a policy impermissible as a matter of law. *See McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir. 1999). Courts have reasoned that "[a] '100% healed' or 'fully healed' policy discriminates against qualified individuals with disabilities because such a policy permits employers to substitute a determination of whether the qualified individual is '100% healed' from their injury for the required individualized assessment whether the qualified individual is able to perform the essential function of his or her job either with or without accommodation." *Id.* However, as the district court explained, "per se violations in the form of 100% healed policies involve the context of workplace injury and subsequent return-to-work requests," which Hustvet's claims do not.

engaged in statutorily protected activity; (2) the employer took an adverse action against the plaintiff; and (3) there existed a causal connection between the adverse action and the protected activity. *See id.* This same standard applies to MHRA retaliation claims. *See Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 759 (8th Cir. 2016). "A retaliation claim under the ADA requires a but-for causal connection between the employee's assertion of her ADA rights and an adverse action by the employer." *Oehmke*, 844 F.3d at 758.[6]

Once the plaintiff establishes a prima facie case, the employer has the burden to produce a non-retaliatory reason for the discharge. *See Product Fabricators*, 763 F.3d. at 974. Finally, if the employer shows such a reason, the burden of production shifts again to the plaintiff, who must then present evidence that the proffered reason for termination was pretext. *See id.* "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, [or] (2) treated similarly-situated employees in a disparate manner. . . ." *Id.* at 970 (alteration in original) (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)).

Hustvet cannot prevail on her retaliation claims because she cannot show the proffered non-retaliatory reason for her termination was pretextual. Even if we construe Hustvet's opposition to the health screen and immunization requirement as a request for accommodation and thus protected conduct, and even if we assume that she did so based on a good faith, reasonable belief that she was entitled to the accommodation, *see Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003), our de novo review of the record does not support a conclusion that Allina terminated her employment because she requested the accommodation. Instead, the evidence shows

---

[6]We are not aware of any Minnesota case addressing whether but-for causation is required under a retaliation claim under the MHRA. *See Oehmke*, 844 F.3d at 759. As in *Oehmke*, it is unnecessary to determine whether the but-for causation standard would apply to the MHRA claim because we find no evidence to support causation even under a mixed-motive standard.

Allina terminated Hustvet's employment because her job required her to work with potentially vulnerable clients and she refused to comply with Allina policy by completing the required health screen and becoming immunized to rubella. Hustvet does not point to any evidence that this non-retaliatory reason was a mere pretext. The evidence shows she was terminated because of her failure to comply with this legitimate policy, not because she opposed it and requested an accommodation exempting her from it. Thus, her retaliation claims fail as a matter of law and summary judgment in favor of Allina was proper.

## III. Conclusion

We affirm the judgment of the district court.

_____